IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUTO-DRIL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-280 |
| | § | H-16-293 |
| | § | |
| NATIONAL OILWELL VARCO, LP., | § | |
| CANRIG DRILLING TECHNOLOGY, | § | |
| LTD. | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING MOTION TO STRIKE EXPERT REPORT**

**I.     Background**

In this patent-infringement case, the defendants move to strike the Rule 702 report and testimony submitted by Kenneth Miller on the ground that he is not a person of ordinary skill in the art. (Docket Entry No. 167). The argument rests on a statement by Michael Stewart, another Auto-Dril claim-construction expert. Stewart stated as follows in his declaration:

> It is my opinion that a [person of ordinary skill in the art] in the context of automatic drillers used in oil and gas drilling control systems, including that described in United States Patent 6,994,172 ('172 or the "Patent"), would have a Bachelor of Science Degree, Petroleum Engineering or Mechanical Engineering or Electrical Engineering with industry experience, or for someone lacking such a degree, at least 10 years of related industry work experience specifically related to oil and gas drilling and the operation of automatic drillers.

(Docket Entry No. 134-1, ¶ 3). The defendants assert that Miller comes up short because he lacks both a bachelor's degree in a relevant field and 10 years of related work experience. The defendants also argue that inconsistencies between Miller's resume and his deposition show that he is not qualified to give opinion testimony under Rule 702 of the Federal Rules of Evidence.

Auto-Dril responds that Miller is a person of ordinary skill in the art under both Stewart's

definition and the definition used by Michael Porche, a claim-construction expert who gave a definition of a person of ordinary skill in the art in another case on the same patent. In his declaration in that case, Porche stated:

> It is my opinion that a [person of ordinary skill in the art] in data acquisition and process control systems at the filing date of the '172 patent would have had a Bachelor of Science Degree in Petroleum Engineering, Mechanical Engineering, Electrical Engineering, Physics, Computer Engineering, or Computer Science with related post-graduate or industry work experience specifically related to data acquisition and process control systems. Individuals would have at least 5 years of industry experience working with autodrillers. Individuals with additional education or additional industrial experience could still be of ordinary skill in the art if that additional aspect compensates for a deficit in one of the other aspects of the requirements stated above. For instance, individuals without the education background could compensate for this by having at least 10 years of industry experience working with autodrillers.

(Docket Entry No. 171-1, ¶ 9).

Each argument is analyzed under the applicable legal standards.

## II. The Legal Standard to Strike Testimony of Witnesses with Specialized Knowledge

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence[.]" That fact must be "of consequence in determining the action." FED. R. EVID. 401. A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. A witness qualified as an expert may give an opinion or other expert testimony if:

> (a) the witness's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the witness has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. "The inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

Rule 702 witnesses routinely testify on claim-construction in patent-infringement cases. "Patent claims are construed from the perspective of one of ordinary skill in the art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 n. 3. Claim-construction opinions must come from "one of ordinary skill in the art who is qualified as a technical expert under Rule 702 of the Federal Rules of Evidence." *Byrne v. Wood, Herron & Evans, LLP*, 450 F. App'x 956, 962–63 (Fed. Cir. 2011); *see also, e.g.*, *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."). Opinion testimony from a person who lacks ordinary skill in the art is inadmissible under Rule 702 because it "serves only to cause mischief and confuse the factfinder." *Sundance*, 550 F.3d at 1362. "[C]ourts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Id.* at 1360. But "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

**III.    Analysis**

Stewart, one of Auto-Dril's claim-construction experts, limited a person of ordinary skill in the art to one who has either a relevant bachelor's degree or "at least 10 years of related industry work experience specifically related to oil and gas drilling and the operation of automatic drillers." (Docket Entry No. 134-1, ¶ 3). Miller does not have a degree. (Docket Entry No. 167-3, 4–6). He worked at Texas Instruments as an automation engineer between 2003 and 2007, at Teledrill as a design engineer between 2007 and 2009, and at Edros Miller as president between 2009 and 2017. (Docket Entry No. 171-2, 16). While at Teledrill, Miller worked on the design, development, and testing of "Measurement While Drilling tools including electronics, firmware and surface software systems." *Id.* As the founding partner of Erdos Miller, he worked in both a technical and business capacity, including "participat[ing] in the design and development of drilling products such as Measurement While Drilling Systems, Automatic Drillers, Mudlogging Systems and other rig control systems as well as downhole tools." *Id.*

The issue is whether Miller's time at Teledrill qualifies as experience specifically related to "the operation of automatic drillers." The defendants cite the following parts of Miller's deposition testimony:

> MR. BOWICK: And the first time you ever worked on an automatic driller was late 2009 or 2010, correct?
> MR. MILLER: The first time that I -- I wrote software for an automatic driller, that's correct.

(Docket Entry No. 167-3, 19)

> MR. BOWICK: And according to your own expert report, Paragraph 3, you didn't begin working and having operational experience of automatic drillers until 2009?
> MR. MILLER: Roughly, that's correct.

*Id.* at 22.

4

| | | |
|---|---|---|
| MR. BOWICK: | | So I'm going to try to ask this question again. |
| MR. MILLER: | | Okay. |
| MR. BOWICK: | | Sitting here today, July the 20th -- |
| MR. MILLER: | | Uh-huh. |
| MR. BOWICK: | | -- 2017, do you have at least 10 years of related industry work experience, specifically related to the operation of automatic drillers? |
| MR. MILLER: | | I think that's a -- I think it's fair to say that I do not have a complete 10 years. |

*Id.* at 23.

In his report supplement, Miller stated that he was focusing on being the "*actual operator of the automatic driller*" when he answered these questions. (Docket Entry No. 172-1, ¶ 3). Miller's deposition supports this statement. Miller answered some of the questions by separating work "related to the operation of automatic drillers"—like designing software or hardware for integrating automatic drillers with other systems on a drilling rig—from work directly operating automatic drillers and limiting his answers to direct operational experience:

| | |
|---|---|
| MR. BOWICK: | Right. You don't have 10 years' experience related to the operation of automatic drillers, do you? |
| MR. MILLER: | When you say experience of the operation, you mean specifically operating such drillers or designing code for them? |
| MR. BOWICK: | Operating automatic drillers. |
| MR. MILLER: | I -- I have not specifically been an operator. I haven't had that job description -- |

(Docket Entry No. 167-3, 22–23).

Other deposition testimony shows that the Measurement While Drilling systems that Miller designed, developed, and tested while at Teledrill were "related to the operation" of automatic drillers:

MR. MILLER: I would say really early on in my career with Teledrill, we would go to drilling rigs to test out the [Measurement While

5

Drilling] system; and there would often be automatic drillers present on those rigs.

*Id.* at 19.

| | |
|---|---|
| MR. BOWICK: | And those systems didn't control automatic drillers? |
| MR. MILLER: | They -- they could have fed data that, you know, an automatic driller used; but it was not their job to control automatic drillers. |
| MR. BOWICK: | And the Teledrill [Measurement While Drilling] device did not interface with an automatic driller, did it? |
| MR. MILLER: | Well, I mean, if the automatic driller was WITS enabled, it may have; but I'm not aware. |
| MR. BOWICK: | You never saw one that was connected, did you? |
| MR. MILLER: | I'm not aware, no. |

*Id.* at 20.

In the supplement to his report, Miller explained that:

[d]uring my employment at Teledrill, I developed software and hardware that received the Measurement While Drilling tool signal and then provided that information to other systems. Integral to my work at Teledrill was ensuring compatibility and ability to interface to the other systems on the rig. Such being the case, I learned all the systems on the rigs and the related interface requirements. This included automatic drillers. It was common for rig configurations included [sic] some form of automatic driller. I do not remember a time in my career when automatic drillers were not a common component on drilling rigs.

(Docket Entry No. 172-1, ¶ 6).

Miller did not personally operate automatic drillers for 10 years, but that is not required to qualify him as a person of ordinary skill in the art under Stewart's definition. The Measurement While Drilling systems he designed, developed, and tested while at Teledrill were for rigs with automatic drillers. *Id.* Miller designed hardware and software to integrate the automatic drilling system with the other systems on the rigs. This experience was related to the operation of automatic drillers. Combining his time at Teledrill with his time at Erdos Miller, Miller has at least 10 years

of relevant work experience in oil and gas drilling related to the operation of automatic drillers, making him a person of ordinary skill in the art under Stewart's standard.

The extent to which Miller's experience or education may impact his conclusions can be explored by cross-examination and by presenting contrary evidence. These are accepted methods to challenge testimony that may be "shaky" but is nonetheless admissible, particularly when, as here, the testimony is on a question for the judge, not a jury. *Daubert*, 509 U.S. at 596; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–91 (1996); *see also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (the danger of admitting less probative evidence is reduced in a bench trial); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) ("*Daubert* requires a binary choice—admit or exclude—and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves.").

Even if the defendants were correct that Miller fails to strictly satisfy Stewart's person-of-ordinary-skill-in-the-art standard, his report is still admissible under Porche's standard. Porche defined a person of ordinary skill in the art as one who has either a B.S. in engineering, physics, or computer science and some postgraduate work on data acquisition and process control systems—including five years of work experience with autodrillers—or ten years of work experience without a degree. (Docket Entry No. 171-1, ¶ 9). If one of these was lacking, like a degree or some experience, additional education or experience could make up the deficit. *Id.* Porche's standard better satisfies *Daubert*'s purpose of ensuring that judges use "flexible" assessments of witnesses giving Rule 702 testimony. 509 U.S. at 594. As applied by the defendants, Stewart's standard is not flexible. A person who left an undergraduate engineering program a month

before graduating and who worked for 9 years and 11 months in a relevant industry would not be considered qualified, even though the proposed testimony would surely assist a judge in understanding proper claim-construction. Porche's standard is properly more functional and less rigid.

Under Porche's standard, Miller is clearly a person of ordinary skill in the art. The defendants concede that Miller has at least eight years of relevant experience in the field of autodrilling. (Docket Entry No. 167). Though Miller did not receive a degree in engineering, computer science, or physics, under Porche's definition, the court considers "additional education" as "compensat[ion] for a deficit in one of the other aspects of the requirements . . . ." (Docket Entry No. 171-1, ¶ 9). Miller took courses in computer science, petroleum engineering, and part of an electronics engineering technology track. (Docket Entry No. 167-3, 5). This additional education compensates for the potential work experience deficit the defendants rely on in seeking to exclude the testimony.

Miller's experience will likely "help the trier of fact to understand the evidence." FED. R. EVID. 702(a). Because Miller is a person of ordinary skill in the art, the defendants' motion to strike his expert report, (Docket Entry No. 167), is denied.

SIGNED on September 26, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge